# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION
# CIVIL ACTION NO. 4:22-CV-00025-HBB

**CHRISTIE J.**[1]                                                           **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Christie J. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 9) and Defendant (DN 19) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 7). By Order entered April 8, 2022 (DN 8), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

### FINDINGS OF FACT

On June 23, 2020, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 15, 178-81). Plaintiff alleged that she became disabled on August 24, 2017, as a

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

result of Meniere's disease (Tr. 15, 79, 90). The application was denied initially on August 12, 2020, and upon reconsideration on August 25, 2020 (Tr. 15, 88, 99).[2] On September 29, 2020, Plaintiff filed a written request for a hearing (Tr. 15, 118-19).

On August 20, 2021, Administrative Law Judge Maribeth McMahon ("ALJ") conducted a telephonic hearing due to the extraordinary circumstances presented by the COVID-19 Pandemic (Tr. 15, 33). Plaintiff and her counsel, Emma McFarland, participated in the telephonic hearing (Id.). Stephanie Barnes, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated October 6, 2021, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-26). The ALJ observed that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2020 (Tr. 18). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity from the alleged onset date of August 24, 2017, through her date last insured (Id.). At the second step, the ALJ determined that Plaintiff has the following severe impairments: Meniere's disease and obesity (Id.). The ALJ also determined that Plaintiff has the following non-severe impairments: gastroesophageal reflux disease, dyslipidemia, and pre-diabetes (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 19).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations: she needed to use an assistive device as needed for walking; she could never climb ladders, ropes

---

[2] The ALJ indicates the application was denied initially on August 13, 2020, and upon reconsideration on August 27, 2020 (Tr. 15). As the Disability Determination and Transmittal forms indicate the dates are August 12, 2020, and August 25, 2020 (Tr. 88, 99), the undersigned has used those dates.

or scaffolds; she could occasionally climb ramps and stairs; she could occasionally stoop and crouch; and she needed to avoid all exposure to unprotected heights or dangerous machinery (Tr. 19-20). The ALJ also determined that through the date last insured, Plaintiff was unable to perform any past relevant work (Tr. 25).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 25-26). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 24, 2017, the alleged onset date, through June 30, 2020, the date last insured (Tr. 26).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 171-74). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a

case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-96.

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Finding No. 4

1. <u>Arguments of the Parties</u>

Plaintiff argues there was not substantial evidence to support the ALJ's failure to find that Plaintiff meets the requirements of Listing 2.07 Disturbance of Labyrinthine-Vestibular Function (DN 9-1 PageID # 1146-50). Essentially, Plaintiff relies on her own testimony and comments in the treatment notes of her Ear, Nose, and Throat specialist, Dr. Taylor, to show she meets the criteria of the listing (<u>Id.</u>).

Defendant contends that substantial evidence supports the ALJ's finding that Plaintiff does not meet or medically equal Listing 2.07 (DN 19 PageID # 1191-96). Defendant asserts that

Plaintiff mischaracterizes the ALJ's decision and overlooks the ALJ's detailed analysis of the medical and other evidence throughout the decision showing her Meniere's disease did not meet Listing 2.07 (Id.) (citing Tr. 20-22). Defendant indicates that Plaintiff failed to meet her burden of showing that during the relevant time period she had progressive loss of hearing, frequent attacks of imbalance, and tinnitus lasting for the minimum twelve-month durational period (Id.) (citing Tr. 20-22).

2. Applicable Law

At the third step, a claimant will be found disabled if her impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 491 (6th Cir. 2010). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). A claimant must satisfy all the criteria to "meet" the listing and be deemed disabled. See 20 C.F.R. § 404.1525(c)(3) and (d); Hale v. Sec'y of Health & Hum. Servs., 816 F.2d 1078, 1083 (6th Cir. 1987). However, a claimant is also deemed disabled if her impairment is the medical equivalent of a listing. 20 C.F.R. § 404.1520(a)(4)(iii); Turner, 381 F. App'x. at 491. Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).[3]

When the record "'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." Sheeks v. Comm'r Soc. Sec.,

---

3 "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." Reynolds v. Comm'r Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011). Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing. See 20 C.F.R. § 404.1526(c) and (d); SSR 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

544 F. App'x 639, 641 (6th Cir. 2013) (quoting Abbott v. Sullivan, 905 F.2d 918, 925 (6th Cir. 1990)). Notably, the Administrative Law Judge is required to actually evaluate the evidence, compare it to the applicable listings, and give an explained conclusion, in order to facilitate meaningful review. Reynolds v. Comm'r Soc. Sec., 424 F. App'x 411, 416 (6th Cir. 2011). If an Administrative Law Judge offers nothing to support his or her conclusions at step three, the reviewing court cannot assess whether the Administrative Law Judge's decision is based on substantial evidence. *See* Combs v. Colvin, No. 15-104-DLB, 2016 WL 1301123, at *4 (E.D. Ky. April 1, 2016) (citing Reynolds, 424 F. App'x at 416; James v. Colvin, No. 3:11-CV-640-S, 2013 WL 4096977, at *8 (W.D. Ky. Aug. 13, 2013)). Thus, such an omission at Step three may constitute reversible error. Id.

Listing 2.07 addresses disturbance of labyrinthine-vestibular function (including Meniere's disease), "characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing" with both of the following: "A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and B. Hearing loss established by audiometry." 20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 2.07.

The regulations provide the following guidance concerning Listing 2.07:

> C. *How do we evaluate vertigo associated with disturbances of labyrinthine-vestibular function, including Meniere's disease?*
> 1. These disturbances of balance are characterized by an hallucination of motion or loss of position sense and a sensation of dizziness which may be constant or may occur in paroxysmal attacks. Nausea, vomiting, ataxia, and incapacitation are frequently observed, particularly during the acute attack. It is important to differentiate the report of rotary vertigo from that of "dizziness" which is described as lightheadedness, unsteadiness, confusion, or syncope.
> 2. Ménière's disease is characterized by paroxysmal attacks of vertigo, tinnitus, and fluctuating hearing loss. Remissions are

> unpredictable and irregular, but may be long-lasting; hence, the severity of impairment is best determined after prolonged observation and serial reexaminations.
> 3. The diagnosis of a vestibular disorder requires a comprehensive neuro-otolaryngologic examination with a detailed description of the vertiginous episodes, including notation of frequency, severity, and duration of the attacks. Pure tone and speech audiometry with the appropriate special examinations, such as Bekesy audiometry, are necessary. Vestibular functions is assessed by positional and caloric testing, preferably by electronystagmography. When polytomograms, contrast radiography, or other special tests have been performed, copies of the reports of these tests should be obtained in addition to appropriate medically acceptable imaging reports of the skull and temporal bone. Medically acceptable imaging includes, but is not limited to, x-ray imaging, computerized axial tomography (CAT scan) or magnetic resonance imaging (MRI), with or without contrast material, myelography, and radionuclear bone scans. "Appropriate" means that the technique used is the proper one to support the evaluation and diagnosis of the impairment.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 2.00C1-3.

3. <u>Discussion</u>

Finding No. 4 sets forth the ALJ's general finding that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 19). The ALJ also made a more specific determination as to Listing 2.07 which reads as follows:

> The claimant's Meniere's disease was evaluated under Listing 2.07, Disturbance of labyrinthinevestibular function. The Listing requires evidence of a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing as well as disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular testing, and hearing loss established by audiometry. Given the medical summary below, the evidence during the period under consideration does not support progressive loss of hearing or frequent attacks of imbalance. There is also little to no mention of tinnitus.

(Id.). This paragraph alone does not provide an adequate discussion of the medical evidence to substantiate the ALJ's determination that Plaintiff does not meet or medically equal Listing 2.07. However, the second to last sentence of the paragraph directs the reader to a more in-depth discussion of the medical evidence at the next step of the sequential evaluation process (Id.).

At step four, the relevant portions of the ALJ's decision read:

> The undersigned finds the evidence herein does not rise to the severity level consistent with a disabling impairment or combination of impairments prior to the date last insured. Medical evidence supports a longstanding history of treatment with Matthew Taylor, M.D., for right-sided Meniere's disease. Her issues with vertigo were treated with as needed steroids and Dramamine. She was able to hear normal conversations and there was no evidence of nystagmus. She underwent successful steroid perfusion in 2015. On July 7, 2017, the claimant was seen at Owensboro Health Medical Group and it was noted that tympanic membrane mobility was abnormal in both ears. She was prescribed Antivert (meclizine) and Dyazide (Exhibit 4F, pg. 243). On October 23, 2018 (Exhibit 4F, pg. 119), the claimant reported to primary care that Dr. Taylor had put her on five-month driving restrictions due to worsening Meniere's, which prompted her to file for disability. However, these restrictions are not noted in the medical evidence of record. Nonetheless, the inability to provide one's own transportation is not consistent with a disability. On August 25, 2018, the claimant filed an application for disability insurance benefits. The claim was denied at the initial level and at reconsideration, but no further appeals were filed. She reported that a recent injection by Dr. Taylor was helpful. She saw Dr. Taylor in January 2019 and reported an exacerbation of symptoms with episodes of imbalance occurring two to three times a week, and it was interfering with her work. However, there is no reported income from work activity after 2017. She underwent steroid perfusion in February, as this was beneficial in the past. Her ability to hear conversational voice was normal. It was noted in March 2019 that recent right-sided steroid perfusion markedly improved her tinnitus and dizziness. Her audiogram did show moderate to moderately severe sensorineural hearing in the right ear. Word recognition was 60 percent in the right ear and 96 percent in the left ear. Per a follow-up in October 2019, she reported no fluctuations or decrease in hearing. She denied recurring episodes of severe

spinning. She reported having episodes of unsteadiness and dizziness occurring once or twice a week when she awakes in the morning. She could hear normal conversation speech and her physical ear examinations were normal. She was prescribed Meclizine to take at bedtime and she was to follow-up in six months. (Exhibit 1F, 2F and 3F)

Evidence received from Owensboro Health Medical Group shows routine follow-ups for issues including dyslipidemia, gastroesophageal reflux disease and elevated hemoglobin A1c, but her physical examinations were unremarkable. . . . [In 2016 and 2017,] . . . [t]reatment notes do not reference complaints of problems with her hearing or with symptoms attributed to her Meniere's disease. . . . She remained stable in 2018. She reported exercising daily and walking. . . . She voiced minimal to no complaints, and her physical examination findings and mental status findings remained in normal range. Hearing, tympanic membrane, and her ear canals were normal in October. It was noted in April 2019 that she was still unable to drive, and recent ear injections had not helped. Her review of systems was positive for dizziness. . . It was noted in November 2019 that she was walking three miles a day. She also had two foster children at this time. She had normal gait and coordination, and normal mood. In May 2020, and just prior to her date last insured, she was seen by telehealth video. She voiced no complaints, and her review of systems was negative including no dizziness. . .

After her date last insured expired, she felt her symptoms were worse in September 2020. Vertigo was occurring while looking up, standing up, turning to the right or left, and walking. Her vestibular exam was normal. She was prescribed prednisone. She had a stable audiogram at this time. She was prescribed vestibular rehabilitation, but she discontinued therapy citing increased Covid cases in the area. She attended four visits (Exhibit 11F). She reported in therapy that her husband would not let her drive due to dizziness. She reported dizziness when waking up in the morning and dizziness if she is on her phone or on her computer for long periods. She returned to Dr. Taylor in January 2021 and her audiogram remained stable, but with continued Meniere flare-ups. She reported that her symptoms were worse, lasting up to an hour, and accompanied by nausea and vomiting, but evidence does not support this degree of symptoms prior to the date last insured. She had unstable gait at this time. She underwent chemical labyrinthotomy in February and was better at her follow-up with

mild to moderate symptoms. She denied nausea and vomiting. In March, she reported having episodes of dizziness/vertigo lasting a few hours for which she underwent chemical labyrinthotomy again. She did require assistance with ambulation in May due to several near falls. Primary care records in April showed normal gait and coordination without mention of an ambulatory assistive device (Exhibit 10F). Overall, the objective evidence herein does not support this degree of limitation prior to the date last insured. (Exhibit 5F, 6F and 9F)

Per updated records from Owensboro Health Medical Group after the date last insured expired, treatment remained static and conservative, but in October, she complained of increased issues surrounding her Meniere's including feeling paranoid at times, fearful of falling due to dizziness, and not wanting to leave her house or get out of bed. . .

Dr. Taylor, the claimant's otolaryngologist, completed a statement with the claimant's representative on August 10, 2021. He reported the claimant had been a patient since 2012 for Meniere's disease. He noted that her condition was more severe that [sic] an average case of Meniere's disease. He noted she has had issues with imbalance and ambulation as well as recurring flare-ups that have not responded to different treatments. He noted that she has flareups every other day to every third day with two to three flare-ups of imbalance a week, and more frequent that typical cases. He referenced multiple treatment modalities including physical therapy, but therapy treatment was limited to only four visits (Exhibit 11F). Dr. Taylor opined that the claimant's symptoms would affect her ability to pay attention and concentrate, and she would need multiple breaks from work including days off. However, she reported spending long periods of time on her phone or on the computer, which would cause dizziness. He noted that she cannot drive. He noted that she reported some falls in the past, but nothing that resulted in injury. Given the objective evidence herein, the undersigned finds Dr. Taylor's statements and opinion are persuasive for the date of his statement, but the undersigned does not find this level of impairment during the period under consideration. His opinion is also inconsistent with primary care records showing the claimant was exercising, walking up to three miles a day, and caring for two foster children. Therefore, the opinion lacks persuasive given the claimant's good response to treatment prior to June 30, 2020. Evidence does support worsening of her Meniere's disease after her date last insured requiring more

aggressive treatment, but this was not the case prior to June 30, 2020. (Exhibit 12F)

The undersigned finds that the claimant's allegations of disabling limitations from August 24, 2017, through her date last insured of June 30, 2020, are not fully supported by the medical evidence of record, or of the severity to preclude all work. While the claimant has residual limitations precluding her from a full range of activities and tasks she performed in the past, she remained capable of performing work within the identified residual functional capacity on a regular and sustained basis. Medical evidence fails to show that her Meniere's disease was of the frequency and/or severity to preclude all work given her positive response to medication and other prescribed therapies prior to June 30, 2020. Evidence shows the claimant saw Dr. Taylor routinely prior to the date last insured and she reported a good response to prednisone. She was exercising and could walk three miles a day, which the undersigned finds most consistent with light exertion. While there is no mention of the claimant using an ambulatory device, the undersigned has provided for such a device in the claimant's residual functional capacity to accommodate her alleged symptoms. While the inability to drive would have made it difficult to obtain and maintain employment, it is not consistent with a disability. She had some hearing loss in the right ear, but she could hear normal conversations with no indication of severe hearing in her good left ear. Per treatment notes, her issues with dizziness primarily occurred in the morning. She was able to provide care for her 16-year-old son with reference to her also having two foster children. In October 2019, Dr. Taylor instructed her to return in six months, which is not consistent with a disabling impairment and suggests her symptoms were under adequate control. At the time of the claimant's application and thereafter, the evidence does support worsening of the claimant's symptoms with more aggressive medical treatment. However, the evidence shows her Meniere's symptoms were not so severe prior to June 30, 2020. There is no objective medical basis for finding the claimant had debilitating Meniere's disease during the period under consideration. Her symptoms were attenuated with medication and other medical therapies to allow for light work with the use of an assistive device for walking to avoid falls and injury along with postural and environmental limitations. The undersigned also takes note of references to the claimant working during the period under consideration, but earnings records show no reported income.

> The claimant testified on August 20, 2021, that she worked for Toyota doing parts inspecting and she supervised three to four people. She testified she lifted up to 50 pounds. She testified she also worked in the past as a daycare as a toddler teacher. She testified she started having drop attacks and falling for no reason at work, and she was eventually told she couldn't work anymore. However, the evidence herein during the period under consideration does not support "drop attacks". Her testimony that these attacks even occurred while seated and lying down lacks persuasiveness. She testified she stopped driving the first of 2019. Treatment notes show she underwent steroid perfusion in February 2019, and in March she reported markedly improved symptoms. Even at her return visit with Dr. Taylor in October, she did not complain of disabling symptoms and symptoms were primarily occurring when she wakes up in the morning. Per primary care records, she reported walking three miles a day in November 2019 and had two foster children. Primary care records show largely normal physical examinations, and minimal complaints. In May 2020, her review of systems was negative for dizziness. Her testimony that she started having daily episodes of dizziness in 2017 lasting five minutes to hours is not fully persuasive. Primary care records showed no Meniere related complaints and her issues with vertigo in 2017 were being managed effectively. Given her testimony, she continued to drive at this time. Her testimony of severe ringing in her ears is unsupported by the medical evidence of record. Her testimony that she has had to hold onto her husband for the last few years for stability and bad balance issues is not supported by the medical evidence and is inconsistent with her ability to walk three miles and exercise along with references in the treatment notes of her working after 2017 and taking care of others. However, the claimant testified to no work after 2017. The undersigned concurs with the claimant's testimony that her condition has gotten worse, but the undersigned is not persuaded to find that her symptoms became significantly worse prior to June 30, 2020, to preclude a range of light work. The undersigned notes that while the claimant had some limitations during the period under consideration, complaints of more extreme incapacity are not fully supported by or consistent with the medical record to preclude the range of work set forth in the residual functional capacity assessment.

(Tr. 20-24). Essentially, the ALJ provided a very detailed analysis of the medical and other evidence in the record showing that Plaintiff's Meniere's disease did not meet the medical

requirements in Listing 2.07 during the relevant time period. Further, the ALJ's findings are supported by substantial evidence in the record. Thus, Plaintiff is not entitled to relief on this claim challenging the ALJ's finding at step three.

### Finding No. 5

1. Arguments of the Parties

Plaintiff challenges the ALJ's RFC determination by making two claims (DN 9 PageID # 1138-46). First, Plaintiff asserts there was not substantial evidence to limit Dr. Taylor's medical opinion to the time after Plaintiff's date last insured expired (Id. at PageID # 1138-43) (citing 20 C.F.R. § 404.1527(d)(2)). Next, Plaintiff contends the ALJ failed to provide substantial evidence for her chosen light work RFC determination (Id. at PageID # 1143-46).

Defendant responds that the ALJ reasonably evaluated and explained why Dr. Taylor's August 10, 2021, limitations were persuasive for the date of his statement but not for the relevant period of August 24, 2017 through June 30, 2020 (DN 19 PageID # 1196-1202). Defendant asserts that substantial evidence supports the ALJ's RFC determination that Plaintiff is capable of performing a range of light work (Id. at PageID # 1202-07).

2. Applicable Law

The RFC determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). Administrative Law Judges make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the RFC determination Administrative Law Judges must necessarily evaluate the

14

persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[4] in the record, even if it comes from a treating medical source. 20 C.F.R. § 404.1520c(a).[5] Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5).[6] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. § 404.1520c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R.

---

4 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. § 404.1513a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. § 404.1513a(b)(1).

5 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

6 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

§ 404.1520c(b)(2). Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).

3. Discussion

Dr. Taylor is Plaintiff's treating Ear, Nose, and Throat specialist. He provided a letter opinion dated May 11, 2021, which confirms Plaintiff's diagnosis with right sided Meniere's disease, summarizes the symptoms and treatment, and opines that Plaintiff "continues to have vertigo and imbalance forcing her to sacrifice her driving ability as well as requiring assistance with ambulation to avoid falls" (Tr. 250). On August 10, 2021, Dr. Taylor provided a more developed statement concerning Plaintiff's diagnosis with right sided Meniere's disease, her symptoms, the treatment she has received, and an opinion concerning Plaintiff's ability to work and how frequently she may miss work each month (Tr. 1098-1100). However, neither document expressly relates these limitations back to the period under consideration which ran from August 24, 2017, Plaintiff's alleged onset date, through June 30, 2020, Plaintiff's date last insured.

The ALJ found Dr. Taylor's statements and opinion were persuasive for the level of impairment that existed on August 10, 2021, but the ALJ did not find that level of impairment existed during the period under consideration (Tr. 22). Additionally, the ALJ explained that Dr. Taylor's opinion was inconsistent with primary care records showing that during the period under consideration Plaintiff was exercising, walking up to three miles a day, and caring for two foster children (Id.). Further, the ALJ concluded that Dr. Taylor's opinion lacked persuasiveness considering Plaintiff's good response to treatment prior to June 30, 2020. While the evidence did support a worsening of Plaintiff's Meniere's disease after her date last insured requiring more

aggressive treatment, the ALJ pointed out that this was not the case prior to June 30, 2020. Contrary to Plaintiff's assertion, the ALJ's evaluation of the persuasiveness of Dr. Taylor's medical opinion is supported by substantial evidence in the record and comports with applicable law set forth in 20 C.F.R. § 404.1520c.

Next, Plaintiff contends the ALJ failed to provide substantial evidence for her chosen light work RFC determination. The undersigned has conducted a thorough review of the record and concludes that the ALJ's RFC determination is supported by substantial evidence in the record and comports with applicable law. Notably, Plaintiff's claim relies heavily on her own testimony and the above-mentioned opinions of Dr. Taylor. For the reasons set forth above, Plaintiff's reliance on Dr. Taylor's opinions is misplaced. The block quotation in the previous section demonstrates that the ALJ explained in great detail the reasons why Plaintiff's subjective statements about the frequency and severity of the "drop attacks," dizziness, tinnitus, and other symptoms were not supported or consistent with the medical and non-medical evidence of record during the period under consideration (Tr. 23-24). As the ALJ's findings are supported by substantial evidence in the record and comport with applicable law, Plaintiff is not entitled to relief on her challenge to the ALJ's RFC determination.

### Finding No.10

1. <u>Arguments of the Parties</u>

Plaintiff claims there was not substantial evidence supporting the ALJ's finding that jobs existed in the regional or national economy consistent with the adopted RFC or in sufficient numbers (DN 9 PageID # 1150-53). In support of her position, Plaintiff asserts the requirement of an assistive device for walking and the obsolescence of the job descriptions in the Dictionary

of Occupational Titles were not properly considered by the vocational expert (Id.).

Defendant contends that the vocational expert's testimony provided substantial evidence which supports Finding No. 10 (DN 19 PageID # 1208-13). Further, Defendant notes that Plaintiff failed to cross-examine the vocational expert about the purported obsolescence of the identified jobs and the requirement of an assistive device as needed for walking (Id.).

2. Applicable Law

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. § 404.1569; Grid Rule 200.00; Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon, 923 F.2d at 1181. But when a claimant's age, education, previous work experience, and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Hum. Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). For

example, if the claimant suffers from an exertional and a non-exertional impairment then the Grids may be used only as a framework to provide guidance for decision making. 20 C.F.R. § 404.1569a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Abbot v. Sullivan, 905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Sec'y of Health & Hum. Servs., 820 F.2d 768, 771 (6th Cir. 1987); Kirk, 667 F.2d at 528-529.

    3,    Discussion

As the ALJ found that Plaintiff suffers from exertional and non-exertional impairments, she appropriately used the Grids only as a framework in the process and, instead, relied on the testimony of the vocational expert to make a non-guideline determination that during the period under consideration Plaintiff could have performed a significant number of jobs that existed in the national economy (Tr. 25-26). Because the regulations continue to recognize the DOT as a source of reliable information and Plaintiff did not to cross-examine the vocational expert about the DOT job descriptions when she had the opportunity, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that during the period under consideration Plaintiff was able to perform work that existed in significant numbers in the national economy. See O'Neal v. Comm'r of Soc. Sec., 799 F. App'x 313, 316-18 (6th Cir. 2020). Thus, Plaintiff is not entitled to relief on this challenge to the final decision of the Commissioner.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up). Regardless of how this Court may view the evidence, it is

not this Court's place to re-try or re-evaluate the findings of the ALJ.  42 U.S.C. § 405(g).  Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.  Id.  After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

February 8, 2023

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:    Counsel